Good morning, and may it please the Court. My name is Jeff Hansen. I represent Mr. Oneal in this appeal. Your Honors are aware that this is a case involving a probation search, and even though this is a very common kind of case that we see so often in our district, the issues raised, I suggest this morning, are very important for that very reason. That is, that we constantly confront the issue of what constitutes a probable cause of misdemeanor assault. And that's why I'm here today to talk about this case. The first issue, of course, is to determine whether or not somebody lives at a given residence or in a hotel room. And the second issue, of course, is what quantum of evidence is necessary for us to determine whether or not a probationer has violated the terms or conditions of his or her probation. Now, we do have a factual finding, do we not, from the district court that the facts did establish both reasonable suspicion that he might have been involved in the homicide and then probable cause to believe that he resided at the house. In the homicide, Your Honor, this was a drug that the tip had said that he was involved in drug dealing. There had been a prior incident in which an allegation had been made, but you're absolutely right. Oh, I'm sorry. I'm confused. We have too many of these. Nothing quite like scaring somebody when they first appear and say, jeez, I'm arguing the wrong case this morning. We're arguing the wrong case this morning. This is the crack cocaine case. It is, Your Honor. I assure you the judge is not on crack. But is this a factual question? Well, always when one is involved in the probable cause determination, there are facts to be applied to the standard of law, Your Honor. But ultimately, it's not. It's a legal question. It's a legal question. That's why you have de novo review. There are no facts in dispute here, are there? Well, I don't believe so, Your Honor. I think that they were pretty straightforward. There are a couple of things that maybe I should point out, in all honesty, which is Judge Alsup ruled below that my client was subject to a probation search condition that required reasonable suspicion. I think that was partly a factual and legal determination on his part. But outside of that, I think that all of the other facts are really not in dispute. But it's a mixed question of law and facts. It is always, Your Honor. It's still subject to de novo review, though, in that respect. And I think that Your Honor points out something that's very important. Judge Alsup, I think, struggled with this. In fact, when I first got the order, I thought that maybe I had persuaded him that this search was invalid because, as you know from reading his order, he went through a number of the factors that the government had argued in favor of the search and said, these simply don't persuade me. And he eventually distilled it down to a finding regarding the birth date, excuse me, and the tip. My concern and my argument mostly with the manner in which the district court applied the facts to the law here is that I think it violated the spirit of Howard. This Court in Howard, and as we take cases like this and try so hard to find a case that's analogous or find something that can lead the Court in determining on similar facts what another panel or another court has done with those same facts, ultimately, it seems to me, we have to pay careful attention to what Howard taught us. Howard, of course, is this Circuit's main case dealing with the issue of probable cause and with respect to a person's residence. And in that case, Judge Bybee was so careful to say, it is probable cause that must be established, not a well-founded suspicion that somebody lived here. Well, here you had an informant saying that this exact defendant lived in this exact room at this exact hotel. And the fact that he used a false name on the registration card at the hotel but had the same birthdate and great similarities in social security number and phone, why isn't that probable cause? I mean, it really is a factual kind of judgment to be made. Your Honor, this is, again, exactly what the issue is, which is how reasonable So I guess to me, is it isn't it reasonable when really the person is basically just using a false name but otherwise matches the description? The answer is no, Your Honor, respectfully, for the following reasons. Under the totality of the circumstances test, you have to look at all of the things that were confronting the officers at the time they went to the hotel, including the fact that when they showed a picture of the person who they were looking for to the clerk, the clerk said, I don't recognize that person. Now, admittedly, she said, I'm relatively new here and I don't know everybody in the hotel. But you have a direct statement by somebody at the front desk that says that's not the person. Well, no, no. She didn't say that's not the person. She just said, I don't recognize that person, which is a little bit different than saying, I know the guy in room 310 and it's not this person. That was not what she said. Agreed, Your Honor. And she did say that she didn't recognize the person. Let's take the case exactly the way Judge Alsop put it together, in which he took out the social security number, he took out the phone number, and he said essentially just the tip, which was pretty specific. And with somebody who really didn't have any access to crime, because she had already been told she wasn't going to get any consideration for it. I understand she was not the most reliable person in the world, but she was also not looking for anything. And then the birthday. Just the birthday. Why aren't those two things together enough? And the birthday also matched what she said insofar as she said how old he was.  He said it was possibly 1973. And here's my argument with response to that. And, again, maybe the purpose sometimes of the argument is to have us look at everything that we would have liked to or should have argued a little bit stronger in our briefs. If you look at this Court's decision in Watts v. Sacramento, which is contained in Howard, one of the cases there, you had a situation where an anonymous tip, but I think the same kind of tip, Your Honor, because I think this person was unreliable due to her background in our case, but. Well, it's not an anonymous tip, because the officers had arrested the informant before, so they knew her. They knew her. They knew she was a street addict. And it was face-to-face. But she was also, and what I was trying to say is that when you have a face-to-face encounter, that normally is more reliable, but in this particular case, because of the fact that the woman was trying to make a deal and had huge numbers of violations and was a crack dealer, I'm not so sure how that enters into the reliability issue. But assuming we, I'm sorry. But the same could also be said of Mr. O'Neill. I mean, he's got a very extensive record of arrests for drug dealing. And how, and all that, I'm not sure how that enters into except on the reasonable suspicion issue. Well, you've got a user who the officers know used crack cocaine, and you've got a guy who makes his living selling crack cocaine, and she tells the officers he's doing it again, basically, out of a hotel that the beat officers know is a common venue for that kind of. I think that does, Your Honor, then go to the reliability aspect and the reasonable suspicion equation. But back to Judge Gerson's question, when you have a situation like happened in Watts v. Sacramento, where somebody gave a tip that a Chris Smith was at a certain address, and that person was wanted for murder and was at that address, and following that tip, the police went to that address, knocked on the door. Somebody who exactly matched the description, African American, 200 pounds, answered the door, happened to be in his underwear, but happened to answer the door, and the police said, Is your name Chris? And he said, Yes, it is. And they said, handcuffed him, and then immediately took him into custody and searched the house. And the Ninth Circuit said that wasn't good enough. The fact that they shared the name Chris, the amazing coincidences of this still didn't constitute probable cause. That's the best analogy I can make to you, Your Honor, in terms of this particular case. And I think it's a fair one, though. People have the same birth dates. And the fact that you have a tip that was so incredibly, Your Honor, it was so incredibly ambiguous here. But no indications of the facts of the Supreme Court's decision in Draper, where the tip was that, you know, the guy is coming on a train arriving in Chicago at such and such a time, and here's what he looks like. And they go to the train station, and sure enough, on the 355 comes Mr. Draper matching the description. The officers essentially were held to have corroborated the tip by virtue of what they observed when the train arrived at the station. Well, and I think that in this case, that same kind of corroboration could have been had. It was undermined by the failure of the clerk to be able to identify the person there. But I think that the fact that it wasn't, in large part, it wasn't corroborated. I mean, it didn't have the same Social Security number. It didn't have the same name. And he didn't have the same phone number. Well, I'm not sure if they know about the phone number. But they – but the first day, he did have it.  And all it took, Your Honor, and I guess because I need to save a little time for rebuttal, all it would have taken is a call to the probation officer. It would have been so simple for them to call the probation officer and say, where does this guy live? And is, in fact, he right now in this area or living somewhere else? And had that happened, and had there been any effort whatsoever to corroborate this, I think we would have been in a different situation. Was that in the record? I didn't see anything about the probation officer. There was a record. Officer Pasqua testified that there was no contact made whatsoever. No, no, no. I understand that. But how do we know what the probation officer's information was? I didn't see that. Oh, we don't. We don't know. That's the point, which is without the call, there was no way. So he may or may not have been able to corroborate that that was his current address. Exactly my point, Your Honor. And that's what we would have asked them to do. Well, but it's not unheard of in the annals of probation supervision for the person being supervised to move without telling the probation officer where he's now living. No, but it might have given them some information that would have furthered whether or not this was actually the person there. Thank you. We'll hear from the government. May I please the Court? My name is Ann Voights, and I represent the government in this case. This Court should affirm the district court's denial of defendant's motion to suppress because the officers did have probable cause based on the very specific detailed tip given to the officers by a known individual, and the defendant's motion to suppress  And by the corroboration provided both by the officers' investigation before they went to the hotel. Would the tip alone have been enough? I think it would be a closer case. I think they did need some corroboration. But this is not a case, as I believe this has been pointed out, of an anonymous informant. They knew who this individual was. They knew that this person used drugs. And so Is there any reason to believe her? I'm sorry, Your Honor? Do they have any reason to believe her? I believe they did because it was such a specific tip. She gave the defendant's complete name. She knew his year of birth. She gave the specific room as well as the hotel. And she was specific as to which Windsor Hotel it was because there were two. And she also had a reason to know that he was selling crack. But that wasn't all the officers knew at the time that they went to the hotel. They had already had a previous encounter with him in the area. So they knew that he sold drugs in that area. They had also pulled his rap sheet. And so when they went to the hotel and they saw the registration card, they saw an exact match between defendant's birthday, as reflected on his rap sheet, and the registration card. And they also knew that that matched the year of birth that the informant had given them. We would submit with all of that corroboration that that amounted to probable cause. They had had an encounter with him in the area because he was arrested after his conviction. Is that what it was? Or when was the encounter in the area? The encounter in the area, he had had an arrest in 2008 where Officer Castillo, who was one of the officers involved in the arrest, she had arrested him, I believe it was about ten blocks away from the Windsor Hotel. And they had also pulled up his rap sheet, which reflected a history of arrests and convictions for trafficking drugs, which would corroborate the tip that the CIA gave that he was, in fact, engaged in selling drugs. With respect to defense counsel's point regarding the Howard case, I would submit that Howard is a very different case from this one. Specifically in Howard, there was an abundance of evidence disproving the idea that the defendant lived in this residence. Howard didn't have a key to the house. There was no credible information that he actually lived in that house. No police surveillance had put him consistently there. And in that case also, both he and the resident had disavowed his presence. We'd submit that, under this Court's language in Franklin, where this Court said that showing that someone has rented a hotel room, establishing residence in the case of a hotel room is significantly easier than it is when we're talking about someone else's house. And we would submit under all of the facts in this case that this was the case.  Kagan, I'm not sure if that's what you're asking, because in the sense that they were about whether somebody was seen at the house, wasn't seen at the house, had a key, didn't have a key, and so on, and they didn't know when he wasn't seen at the house, they didn't know if he had a key, none of that existed here. The only thing that existed was a tip and a birthday. Correct. They had the tip and they had the birthday. And the birthday was matched across all the birth year matched across all three pieces of information, his rap sheet, the tip, and the registration card. And more specifically, the rap sheet birth date, his birth date, and the registration card birth date were exact and then were exact matches. Then there were also additional pieces of information which the district court didn't consider, but which also supported the finding of probable cause in this case. We'd submit also that the match with the birth date is different from the case on which defendant relies, in which it was simply a match between a fairly common first name, Chris, as opposed to a case where you have a match between the day, the month, and the year. Actually, we have no idea whether there are more than 100, 365 people are named Chris. Probably not. Correct. And here, what it shows is this was a direct match between the birth dates of the single individual in room 310 and defendant's rap sheet. We'd submit on that that that was sufficient. Other than that, I'd simply point out that under California law, the terms of defendant's supervised release have been deemed to be to warrant suspicionless searches as a matter of law and interpretation. Do we need to reach that issue, though, if we agree with the district court that there was reasonable suspicion to believe he was dealing drugs once again? No, Your Honor. You don't need to reach it. It can be affirmed either on that ground or under Baker. If this Court has no further questions, I'd be happy to submit. I don't believe that we do. Thank you. Thank you, Your Honor. Mr. Hanson, although you used your time, we asked you a lot of questions, so you may have a minute for rebuttal if you want it. With respect to the last statement that you just made, Judge Tolman, with regard to this, the main concern I have about the tip with respect to founded suspicion is that even though it might have identified my client as somebody, there was absolutely no basis for the claim that he was, in fact, selling drugs. Well, that was the tip, was it not? That was what the informant told the officers that started the whole investigation. Right. And then they looked at his – well, they knew him because they previously arrested him for drug dealing, and they looked at his rap sheet, which showed multiple arrests for drug dealing. If that doesn't constitute reasonable suspicion that he's dealing drugs again, I don't know what does. I don't think, Your Honor, the cases have ever said that simply by saying, I believe so-and-so is dealing drugs without when, how do you know that? Did you buy them from them? When were they selling them? Where were they selling them? All of those questions were – except for the fact that she said near 6th Street. Right. Outside of that, there was no indication of time or whatever. And his name is LaConte O'Neill, and he was born in 1973. Which is a different issue. It might have been the person, but not what he was doing. So in that regard, I don't think there was founded suspicion for illegality, and I'll submit it on that. Thank you very much, Your Honor. Thank you, Mr. Carney. We appreciate very much the arguments of both counsel. The case just argued is submitted.
judges: Graber, Berzon, Tallman